U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED
2/24/2022
BY _____ _Ltw_
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**DISTRICT OF VERMONT**

BRIAN FARRIS, LANCE GROFF, and TOM
THEUS, individually and on behalf of all others
similarly situated,

        Plaintiffs,

v.

THE ORVIS COMPANY, INC.,

        Defendant.

Case No. 2:22-cv-00007-cr

**AMENDED CLASS**
**ACTION COMPLAINT**

(JURY TRIAL DEMANDED)

Plaintiffs Brian Farris, Lance Groff and Tom Theus ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, make the following allegations based on the investigation of counsel and upon information and belief, except as to allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1.     Unsatisfied with traditional sales revenue alone, Defendant The Orvis Company, Inc. ("Orvis") has resorted to selling and renting mailing lists containing Plaintiffs' and all other customers' names and addresses, as well as age, gender, income, ethnicity, religion, children's age, and information pertaining to their purchase of products from Orvis ("Personally Identifying Transactional Data") on the open market to anyone interested in purchasing them, including data miners, data aggregators, data appenders, data cooperatives, list brokers, aggressive marketing companies, and various other parties. Prior to monetizing Plaintiffs' and its other customers' Personally Identifying Transactional Data, Orvis did not ask for much less obtain consent from any of these individuals.

2.     Documented evidence confirms these facts. For example, Orvis, either directly or through one or more intermediaries acting on its behalf and at its direction, including through "list

managers" and/or "list brokers," sold and rented to various parties the mailing list titled "ORVIS

ENHANCED MASTERFILE Mailing List." The list contains the names, addresses, and other

Personally Identifying Transactional Data of all individuals who purchased products from Orvis

(including the types of products purchased), including Plaintiff and each member of the Class, at

a base price of "$120.00/M [per thousand]," (i.e., 12.0 cents apiece), as shown in pertinent part in

the screenshot below from list broker NextMark, Inc.'s website:



See **Exhibit A** hereto.

      3.      The right of publicity statutes of California, Illinois and Ohio clearly prohibit what

Orvis has done. *See* Cal. Civ. Code § 3344, *et seq.* (the "CRPL"); 765 ILCS 1075, *et seq.* (the

"IRPA"); Ohio Rev. Code § 2741, *et seq.* (the "ORPL") (collectively, the "Publicity Statutes").

The Publicity Statutes each prohibit using a person's name or likeness on or in connection with a

product, good, piece of merchandise, or a service without the person's prior consent. Orvis directly violated the Publicity Statutes by selling and renting, on the open market to any member of the public interested in purchasing, mailing lists that contained Plaintiffs' and all of its other customers' names, addresses, and other Personally Identifying Transactional Data.

4.    Orvis's practices of monetizing its customers' names and likenesses for commercial purposes without their consent is unlawful and imposes unjustified risks on its customer base, especially vulnerable members of society who may be targeted by data purchasers based on identity, interest and other demographic criteria.

5.    For example, anyone could buy or rent a list that contains the names, addresses, and other Personally Identifying Transactional Data of persons in California, Illinois, or Ohio over the age of 60 who earn over $100,000 per year, have children over the age of 30, and purchased a pair of shoes from Orvis in the past year. Orvis makes such a list available for sale or rental on the open market for approximately $212.00 per thousand customers listed.

6.    Orvis's misuse of its customers' names, likenesses, and other personally identifying attributes in this way, while profitable, violates its customers' statutory rights of publicity under the Publicity Statutes.

7.    Plaintiffs bring this Class Action Complaint against Orvis to stop its plainly unlawful use of its customers' names and likenesses in disregard of their statutorily protected rights and to obtain compensation for those affected.

## PARTIES

8.    Plaintiff Brian Farris is, and at all times relevant to this action has been, a living, natural person and a domiciled resident and citizen of California. During the time period relevant to this action, Plaintiff Farris purchased products from Orvis while residing in, a citizen of, and physically present in California.

3

9.      Plaintiff Lance Groff is, and at all times relevant to this action has been, a living, natural person and a domiciled resident and citizen of Illinois. During the time period relevant to this action, Plaintiff Groff purchased products from Orvis while residing in, a citizen of, and physically present in Illinois.

10.     Plaintiff Tom Theus is, and at all times relevant to this action has been, a living, natural person and a domiciled resident and citizen of Ohio. During the time period relevant to this action, Plaintiff Theus purchased products from Orvis while residing in, a citizen of, and physically present in Ohio.

11.     Defendant The Orvis Company, Inc. is a Vermont corporation that maintains its headquarters and principal place of business in Sunderland, Vermont. Orvis is is a retail and mail-order business specializing in fly fishing, hunting and sporting goods.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one member of each of the Classes (defined below), including each of the Plaintiffs, is a citizen of a state different from Orvis.

13.     The Court has personal jurisdiction over Orvis because Orvis maintains its corporate headquarters and principal place of business in Sunderland, Vermont.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Orvis is subject to personal jurisdiction in this judicial District, because Orvis resides in this judicial District, and because a substantial part of the events giving rise to Plaintiffs' claims took place within this judicial District.

4

## PERTINENT STATUTORY SCHEMES

### I.   California Publicity Statute

15.     The CRPL prohibits any person from, *inter alia*, using "an individual's name . . .

or likeness, in any manner, on or in products, merchandise, or goods." Cal. Civ. Code § 3344(a).

Specifically, Section (a) of the CRPL states, in pertinent part:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.

16.     Notably, California Civil Code Sec. 3344 was amended in 1984 to include the

phrase (appearing in the statutory text quoted above) "on or in products, merchandise, or goods"

as an additional way in which an unauthorized use of a person's name or likeness violates the

statute. *See* Stats.1984, ch. 1704, § 2, p. 6172. In making this amendment, the California legislature

sought to prohibit the use of a person's name on or in a product, good, or piece of merchandise,

rather than simply in an advertisement for another product or service. *Comedy III Prod's., Inc. v.

Gary Saderup, Inc.*, 21 P.3d 797, 801-02 (Cal. 2001).

17.     "In any action brought under [the CRPL], the person who violated the section shall

be liable to the injured party or parties in an amount equal to the greater of seven hundred fifty

dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use, and

any profits from the unauthorized use that are attributable to the use and are not taken into account

in computing the actual damages." *Id.* § 3344(a).

### II.   Illinois Publicity Statute

18.     The IRPA prohibits any person from, *inter alia*, publicly using or holding out an

individual's identity, such as their name, likeness, or other identifying attribute, on or in connection

5

with the sale or offering for sale of a product, good, or service.  *See* 765 ILCS 1075/5, 30(a). Specifically, Section 30 of the IRPA states, in pertinent part:

> A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent from the appropriate person or persons specified in Section 20 of this Act or their authorized representative.

19.     The IRPA defines "identity" as "an attribute of an individual that serves to identify the individual to an ordinary, reasonable viewer, or listeners including but not limited to (i) name, (ii) signature, (iii) photograph, (iv) image, (v) likeness, or (vi) voice." 765 ILCS 1075/5.

20.     The IRPA provides for, *inter alia*, statutory damages of $1,000.00 per violation of the statute and punitive damages for willful violations of the statute. *See* 765 Ill. Comp. Stat. 1075/40.

**III.    Ohio Publicity Statute**

21.     The ORPL prohibits any person from, *inter alia*, "us[ing] any aspect of an individual's persona for a commercial purpose . . . during the individual's lifetime" unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code § 2741.02(A)-(B).

22.     The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value." *Id.* § 2741.01(A). And the ORPL defines commercial purpose as, *inter alia*, "the use of or reference to an aspect of an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities[.]" *Id.* § 2741.01(B).

23.     A plaintiff injured by a violation of the ORPL is entitled to, *inter alia*, "statutory damages in the amount of at least two thousand five hundred dollars and not more than ten thousand dollars, as determined in the discretion of the trier of fact, taking into account the

willfulness of the violation, the harm to the persona in question, and the ability of the defendant to pay a civil damage award," Ohio Rev. Code § 2741.07(A)(1)(b), as well as punitive or exemplary damages (where applicable), *id.* § 2741.07(A)(1)(c), and "temporary or permanent injunctive relief, *id.* § 2741.07(D)(3).

## FACTS COMMON TO ALL CLAIMS

24.    Orvis maintains a vast digital database comprised of its customers' information, including their names, addresses, likenesses, and various other forms of personally identifying and highly sensitive Personally Identifying Transactional Data.

25.    Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), sold and rented during the relevant time period, and continues to sell and rent to this day, lists on or in which all of its customers' names, addresses, and other Personally Identifying Transactional Data appear. Orvis has sold and rented (and continues to sell and rent) these lists on the open market to anyone willing to pay for them, including on a regular basis to data miners, aggregators, appenders, and cooperatives, aggressive marketing companies, and others.

26.    As a result of Orvis's data compiling and sales practices, any member of the public can purchase or rent customer mailing lists from Orvis on or in which Plaintiffs' and the other Class members' names, addresses, and other Personally Identifying Transactional Data appear. Orvis's practices of selling and renting these mailing lists puts consumers, especially the more vulnerable members of society, at risk of serious harm from scammers, among other things, and flouts the privacy protections the Publicity Statutes are designed to provide.

27.    Orvis does not seek its customers' prior consent (written or otherwise) to any of these practices, and its customers remain unaware that their names, addresses, and other Personally Identifying Transactional Data (as well as various other categories of sensitive personally

identifying information) are used by Orvis on or in the mailing lists that the company has sold and rented (and continues to sell and rent) on the open market to any member of the public interested in purchasing them.

28.     Orvis uniformly fails to obtain consent from—or even provide effective notice to—its customers before engaging in the practices described herein.

29.     By and through these actions, Orvis has used Plaintiffs' and all of its other California, Illinois, and Ohio customers' names and likenesses, which have commercial value, on or in, or in connection with products, merchandise, goods, or services, or the sale or rental of such things, in direct violation of the Relevant Statues.

## CLASS ACTION ALLEGATIONS

30.     Plaintiff Ferris seeks to represent a class comprised of, and defined as: All California residents who, at any point in the relevant statutory period, had their names appear on or in a mailing list sold or rented, or offered for sale or rental, by Orvis (the "California Class").

31.     Plaintiff Groff seeks to represent a class comprised of and defined as follows: All Illinois residents who, at any point in the relevant statutory period, had their names appear on or in a mailing list sold or rented, or offered for sale or rental, by Orvis (the "Illinois Class").

32.     Plaintiff Theus seeks to represent a class comprised of and defined as follows: All Ohio residents who, at any point in the relevant statutory period, had their names appear on or in a mailing list sold or rented, or offered for sale or rental, by Orvis (the "Ohio Class").

33.     Collectively, the three classes above are referred to as the "Classes."

34.     Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, the members of the Classes number in the millions. The precise number of Class members and their identities are unknown to Plaintiffs at this time but

may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the records of Orvis.

35.     Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual Class members.  Legal and factual questions common to the Class (or Classes) include, but are not limited to:

> (a) whether Orvis uses Class members' names, likenesses, personalities, personas, and other indica of identity on or in mailing lists which it sells or rents;
>
> (b) whether the conduct described herein constitutes a violation of Cal. Civ. Code § 3344;
>
> (c) whether the conduct described herein constitutes a violation of 765 ILCS 1075, *et seq.*;
>
> (d) whether the conduct described herein constitutes a violation of Ohio Rev. Code § 2741.01, *et seq.*; and
>
> (e) whether Plaintiffs and the Classes are entitled to injunctive relief.

36.     The claims of the named Plaintiffs are typical of the claims of the other members of the Classes in that the named Plaintiffs and the members of the Classes were injured and sustained damages by Orvis's uniform wrongful conduct, based upon Orvis's practices of using Plaintiffs' and Class members' names, likenesses, and other personally identifying attributes on or in connection with the mailing lists it sold (and its sales and rentals of such lists) to third parties on the open market.

37.     Plaintiffs are adequate representatives of the Classes because none of the Plaintiff's interests conflict with the interests of the other members of the Classes, Plaintiffs have retained competent counsel experienced in prosecuting class actions, and Plaintiffs intend to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

38.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Orvis's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court on the issue of Orvis's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of such issues.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

#### Violation of Cal. Civ. Code § 3344
#### (By Plaintiff Ferris Individually and on Behalf of the California Class)

39.    Plaintiff Ferris repeats and incorporates herein the allegations set forth above.

40.    Plaintiff Ferris brings this claim individually and on behalf of members of the California Class against Orvis.

41.    Plaintiff Ferris is a natural person and therefore a "person" within the meaning of the CRPL.  *See* Cal. Civ. Code § 3344(a).

42.    Orvis is a corporation and thus a "person" within the meaning of the CRPL.  *See id.*

43.    Plaintiff Ferris, while residing in California, purchased products from Orvis. Each member of the California Class likewise resides in California and purchased products from Orvis.

10

44. At no time before or at the time Plaintiff Ferris purchased products from Orvis did Orvis notify Plaintiff Ferris that it would use his name or likeness "on or in products, merchandise, or goods" by selling and renting mailing lists on or in which Orvis used his name, address, and other Personally Identifying Transactional Data, as well as myriad other categories of personal and demographic information. *See* Cal. Civ. Code § 3344(a). Plaintiff Ferris has never consented to Orvis using his name or likeness "on or in products, merchandise, or goods" in this way. *See id.*

45. Orvis likewise failed to notify any of its other customers, including the members of the California Class, that it would use their names or likenesses "on or in products, merchandise, or goods" by selling and renting mailing lists on or in which their names, addresses, and other Personally Identifying Transactional Data, as well as myriad other categories of personal and demographic information, all appeared. *See id.* And none of the members of the California Class has consented to Orvis using their name or likeness "on or in products, merchandise, or goods" in this way. *See id.*

46. After Plaintiff Ferris purchased products from Orvis, and during the relevant statutory period, Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly sold mailing lists containing Plaintiff Ferrisss name and likeness (among other identifying and highly sensitive Personally Identifying Transactional Data, which, *inter alia*, identified him as an individual who had purchased products from Orvis) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining Plaintiff Ferris's consent or even giving him prior notice of its use of his name and likeness in this way. Likewise, during the statutory period relevant to this action, Orvis knowingly sold mailing lists containing the names and likenesses of the members of the California Class (among other

11

identifying and highly sensitive Personally Identifying Transactional Data) to various third parties, including to data aggregators, data appenders, data cooperatives, and others, without first obtaining consent to these practices from, or even providing prior notice to, any of these individuals.

47.     The mailing lists that Orvis knowingly sold and continues to sell, on the open market to anyone interested in purchasing them, constitute "products, merchandise, or goods" within the meaning of the CRPL. *See* Cal. Civ. Code § 3344(a).

48.     Orvis knowingly used and continues to "use" Plaintiff Ferris's and the other California Class members' names and likenesses "on or in" such mailing lists. *See id.*

49.     Significant commercial value exists in the aspects of Plaintiff Ferris's and the California Class members' names and likenesses that Orvis used and continues to use on or in its mailing lists.

50.     Orvis's unauthorized use of Plaintiff Ferris's and the California Class members' names and likenesses on its mailing lists, as alleged herein, did not constitute "use[s] of . . . name[s] . . . or likeness[es] in connection with any news, public affairs, or sports broadcast or account, or any political campaign[.]" Cal. Civ. Code § 3344(d).

51.     By and through these actions, Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly "use[d] another's name . . . or likeness . . . on or in products, merchandise, or goods," without such person[s'] prior consent," in direct violation of the CRPL. *See* Cal. Civ. Code § 3344(a).

52.     Orvis knowingly used Plaintiff Ferris's and the other California Class members' names and likenesses on its mailing lists without prior consent in violation of the CRPL. During the time period relevant to this action, Orvis, either directly or through one or more intermediary

acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw the compilation and assembly of the subject mailing lists from its customer database, the advertising of such mailing lists on the open market, and the actual sales of such mailing lists to various third parties. Orvis reaped significant monetary profits through its sales of mailing lists on or in which Plaintiff Ferris's and the other California Class members' names and likenesses appeared.

53.     Plaintiff Ferris and the members of the California Class have been injured, in California, from the violations of their rights of publicity that they suffered as a result of Orvis's nonconsensual use of their names and likenesses in the manner described herein.

54.     On behalf of himself and the California Class, Plaintiff Ferris seeks: (1) $750.00 in statutory liquidated damages or actual damages, whichever is greater, as well as any profits from Orvis's unauthorized uses of his and the California Class members' names and likenesses that are attributable to such uses and are not taken into account in computing any actual damages, for himself and each California Class member pursuant to Cal. Civ. Code § 3344(a); (2) an award of punitive damages pursuant to Cal. Civ. Code § 3344(a); (3) a declaration that Orvis's conduct described herein violates Cal. Civ. Code § 3344(a); (4) an injunction prohibiting Orvis from further using Plaintiff Ferris's and the California Class members' names or likenesses on or in the mailing lists that it sells, and requiring Orvis to obtain prior consent from persons in California prior to doing so in the future; and (5) costs and reasonable attorneys' fees pursuant to Cal. Civ. Code § 3344(a).

13

## SECOND CLAIM FOR RELIEF

### Violation of 765 ILCS 1075, *et seq.*
### (By Plaintiff Groff Individually and on Behalf of the Illinois Class)

55.     Plaintiff Groff repeats and incorporates herein the allegations set forth above.

56.     Plaintiff Groff brings this claim individually and on behalf of members of the Illinois Class against Orvis.

57.     Plaintiff Groff is a "living . . . natural person" and thus an "individual" within the meaning of the IRPA.

58.     Orvis is a corporation and thus a juristic "person" within the meaning of the IRPA. *See* IRPA § 5.

59.     Plaintiff Groff, an Illinois resident, purchased products from Orvis. Each member of the Illinois Class likewise resides in Illinois and purchased products from Orvis.

60.     Prior to and at the time Plaintiff Groff purchased products from Orvis, Orvis did not notify Plaintiff Groff that it would publicly use his identity for commercial purposes by selling or offering to sell his name, address, and other Personally Identifying Transactional Data on the open market to any member of the public interested in purchasing this data, and Plaintiff Groff has never consented (in writing or otherwise) to Orvis doing so. Orvis likewise failed to notify any of the other Illinois Class members that it would use their identities for commercial purposes by selling or offering to sell their names, addresses, and other Personally Identifying Transactional Data on the open market to the public at large, and none of the members of the Illinois Class has consented (in writing or otherwise) to Orvis doing so.

61.     After Plaintiff Groff purchased products from Orvis, and during the relevant statutory period, Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list

14

broker"), offered for sale to the community at large mailing lists containing Plaintiff Groff's name, address, and other Personally Identifying Transactional Data (which identified him as an individual who had purchased products from Orvis) and sold and rented those lists on the open market to any member of the public willing to purchase them, including to data aggregators, data appenders, data cooperatives, and various other persons, without first obtaining Plaintiff Groff's written consent or even giving him prior notice of its public use and holding out of his identity in this way. Likewise, during the statutory period relevant to this action, Orvis offered for sale and sold on the open market, to any member of the public interested in purchasing, mailing lists identifying the names, addresses, and other Personally Identifying Transactional Data of all of the other individuals who had purchased products from Orvis, including each member of the Illinois Class, without providing prior notice to or obtaining written consent from any of these individuals.

62.     The name "Lance Groff," one of the identifying attributes Orvis publicly used, is "the actual name . . . by which [Plaintiff Groff] is known that is intended to identify [him]," on the mailing lists that Orvis sold or offered for sale on the open market to anyone willing to pay for them.  Accordingly, Orvis used Plaintiff Groff's "identity" within the meaning of the IRPA. *See* 765 ILCS 1075/5.

63.     Orvis's offers to sell mailing lists on which Plaintiff Groff's and the other Illinois Class members' identities appeared to the community at large, and its sale of those lists to any member of the public willing to pay for them, caused Plaintiff Groff's and the Illinois Class members' names and additional identifying attributes to be made accessible to, and shared with, the community at large and exposed to general view by Orvis or by one or more intermediaries acting on its behalf and at its direction. Orvis's making accessible and sharing of Plaintiff Groff's and the Illinois Class members' identities (identifying them as individuals who had purchased

15

products from Orvis) with the community at large, including any member of the general public willing to purchase them, constituted "public use or holding out" within the meaning of IRPA. *See Id.*

64.     The mailing lists that Orvis sold and offered to sell constituted "products," "merchandise," or "goods" within the meaning of the IRPA.

65.     Thus, Orvis's sales and offers to sell mailing lists on which Plaintiff Groff's and the other Illinois Class members' names, addresses, and other Personally Identifying Transactional Data appeared, on the open market to any member of the public willing to pay for them, constituted "the public use or holding out of [these] individual[s'] identit[ies] . . . on . . . a product, merchandise, [or] goods[.]" IRPA § 5. Accordingly, Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), used Plaintiff Groff's and the Illinois Class members' identities "for commercial purposes" within the meaning of the IRPA. 765 ILCS 1075/5.

66.     Additionally, Plaintiff Groff's purchase of products from Orvis, and the Illinois Class members' purchase of products from Orvis, each concerned a "product," piece of "merchandise," or a "good[]" within the meaning of the IRPA. *See* 765 ILCS 1075/5.

67.     Thus, Orvis's sales and offers to sell mailing lists on which Plaintiff Groff's and the other Illinois Class members' names appeared constituted "the public use or holding out of [these] individual[s'] identit[ies] . . . in connection with the offering for sale or sale of a product, merchandise, [or] good . . .," 765 ILCS 1075/5. Specifically, because the mailing lists identified by name individuals who had previously purchased products from Orvis, Orvis's use of Plaintiff Groff's and the other Illinois Class members' identities on the mailing lists it sold and offered to sell to the community at large was done in connection with the prior sales of products, goods,

merchandise, or services to Plaintiff Groff and the other members of the Illinois Class. Accordingly, Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), also used Plaintiff Groff's and the Illinois Class members' identities "for commercial purposes" within the meaning of the IRPA in this way. 765 ILCS 1075/5.

68.     By selling and offering to sell mailing lists on which Plaintiff Groff's and the other Illinois Class members' names, addresses, and other Personally Identifying Transactional Data appeared to the community at large, to any member of the public willing to pay for them, without first asking for much less obtaining Plaintiff Groff's or the other Illinois Class members' prior written consent, Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), used Plaintiff Groff's and the other Illinois Class members' identities for commercial purposes during their lifetimes in violation of section 30(a) of the IRPA. *See* 765 ILCS 1075/30(a).

69.     As a result of Orvis's nonconsensual public use and holding out of their identities for commercial purposes, Plaintiff Groff and the members of the Illinois Class have suffered violations of their rights of publicity.  On behalf of himself and the Illinois Class, Plaintiff Groff seeks: (1) an injunction requiring Orvis to obtain written consent from Illinois customers prior to the use of their identities for commercial purposes pursuant to 765 ILCS 1075/50; (2) $1,000.00 in statutory liquidated damages to himself and each Illinois Class member pursuant to 765 ILCS 1075/40 (a)(2); and (3) costs and reasonable attorneys' fees pursuant to 765 ILCS 1075/55.

## THIRD CLAIM FOR RELIEF

### Violation of Ohio Rev. Code § 2741, *et seq.*
### (By Plaintiff Theus Individually and on Behalf of the Ohio Class)

70.     Plaintiff Theus repeats and incorporates herein the allegations set forth above.

71.     Plaintiff Theus brings this claim individually and on behalf of members of the Ohio Class against Orvis.

72.     Plaintiff Theus is a natural living person and therefore an "individual" within the meaning of the ORPL. *See* Ohio Rev. Code. § 2741.02.

73.     Orvis is a corporation and therefore a juristic "person" within the meaning of the ORPL. *See id.*

74.     Plaintiff Theus, while residing in Ohio, purchased products from Orvis. Each member of the Ohio Class likewise resides in Ohio and purchased products from Orvis.

75.     Prior to and at the time Plaintiff Theus purchased products from Orvis, Orvis did not notify Plaintiff Theus or the members of the Ohio Class that it would use their names or other identifying attributes "on or in connection with" the mailing lists that it sells and rents. Plaintiff Theus and the Ohio Class members have never given Orvis authorization to do so.

76.     After Plaintiff Theus purchased products from Orvis, and during the relevant statutory period, Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), knowingly advertised the sale and rental of, and actually sold and rented, to various members of the general public, mailing lists containing Plaintiff Theus's name, address, and other Personally Identifying Transactional Data (which identified him as an individual who had purchased products from Orvis), including to data aggregators, data appenders, data cooperatives, and various other persons interested in buying such data, without first obtaining Plaintiff Theus's

18

written consent or even giving him prior notice of its use of his name and identity in this way. Likewise, during the statutory period relevant to this action, Orvis knowingly advertised the sale and rental of, and sold and rented, to various members of the public, mailing lists containing the names and addresses (among other Personally Identifying Transactional Data) of all individuals who had purchased products from Orvis, including each member of the Ohio Class, without first obtaining written consent from or even providing prior notice to any of these individuals.

77.     The name "Tom Theus," one of the identifying attributes Orvis used on or in connection with the mailing lists that it sells and rents, is "the actual, assumed, or clearly identifiable name or reference to [Plaintiff Theus] that identifies [him]" as a person. Accordingly, Orvis used Plaintiff Theus's "name" or "likeness," and thus his "persona," within the meaning of the ORPL. *See id.* § 2741.01(A), (C).

78.     As alleged above throughout, Orvis knowingly used Plaintiff Theus's and each Ohio Class member's name or likeness (and thus each of their persona) on or in connection with its products, merchandise, goods, or services and thus for "commercial purposes" within the meaning of the ORPA. *See id.* § 2741.01(b)(1).

79.     Significant commercial value exists in the aspects of Plaintiff Theus's name and the other Ohio Class members' names that Orvis uses on or in its products, goods, merchandise, and services.

80.     Orvis did not request, much less obtain, any prior "written, electronic, digital, or any other verifiable means of authorization" from Plaintiff Theus or any other Ohio Class member prior to using their names or identities (i.e., personas) for commercial purposes within the meaning of the ORPL. *See id.* § 2741.01(F).

81.     Accordingly, by using Plaintiff Theus's and each Ohio Class member's "name,"

19

"an[] aspect of [each of their] persona[,] for a commercial purpose . . . during their lifetime[s]," while they resided in Ohio, and without their "written consent," Orvis directly violated the ORPL. *See id.* §§ 2741.01(A), (C), 2741.02(A)-(B).

82.     Plaintiff Theus's injury was suffered in Ohio, where he resides. Each Ohio Class member's injury was likewise suffered in Ohio, where each such person resides.

83.     Orvis knowingly and willfully used Plaintiff Theus's and the other Ohio Class members' names and identities (and other Personally Identifying Transaction Data) without their written consent in this way. Orvis, either directly or through one or more intermediary acting on its behalf and at its direction (including through NextMark and/or one or more "list manager" and/or "list broker"), directed and oversaw both the advertising of the sale and rental of the subject mailing lists on the open market as well as the actual sales and rentals of such lists to various third parties who purchased or rented such lists during the time period relevant to this action. Orvis reaped significant monetary profits as a result of its sales and rentals of mailing lists on which and in which Plaintiff Theus's and the other Ohio Class members' names and identities appeared.

84.     Plaintiff Theus and the members of the Ohio Class have been injured, while residing in Ohio, from the violations of their rights of publicity caused by Orvis's nonconsensual use of their names and identities (and thus their personas) in this way.

85.     On behalf of himself and the members of the Ohio Class, Plaintiff Theus seeks: (1) statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to himself and each Class member pursuant to Ohio Rev. Code. §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2); (2) an award of punitive or exemplary damages pursuant to Ohio Rev. Code. § 2741.07(A)(1)(c); (3) an injunction requiring Orvis to obtain prior written consent from Ohio customers prior to the use of their names or identities on or in the mailing lists that it advertises and sells and rents pursuant to

Ohio Rev. Code. § 2741.07(D)(3); and (4) costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. § 2741.07(D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant The Orvis Company, Inc. as follows:

A. For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs as the representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent members of the Classes;

B. For an order declaring that the Defendant's conduct violates the Publicity Statutes referenced herein;

C. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

D. For compensatory, statutory, punitive, and/or other damages in amounts to be determined by the Court and/or jury;

E. For prejudgment interest on all amounts awarded;

F. For an order of restitution and all other forms of equitable monetary relief;

G. For all injunctive relief the court finds appropriate; and

H. For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiffs, on behalf of themselves and members of the Classes, demand a trial by jury on all causes of action and issues so triable.

Dated: February 22, 2022

Respectfully submitted,

Aaron T. Morris (# 5967)
**MORRIS KANDINOV LLP**
3391 Mountain Road, Unit 4
Stowe, Vermont 05672
(332) 240-4024
aaron@moka.law

Frank S. Hedin*
Arun G. Ravindran*
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: (305) 357-2107
Fax: (305) 200-8801
fhedin@hedinhall.com
aravindran@hedinhall.com
* *Pro Hac Vice* Application Forthcoming

*Counsel for Plaintiffs and the Putative Classes*